UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

IN RE:                                          )
                                                )    2:12-CV-421
PHILLIPS RENTAL PROPERTIES, LLC                 )
                                                )    Judge Curtis L. Collier
                                                )
                        Debtor.                 )


## MEMORANDUM & JUDGMENT ORDER

Before the Court is an appeal by Phillips Rental Properties, LLC ("Appellant") from the order of the United States Bankruptcy Court for the Eastern District of Tennessee allowing Arthur S. Roberts, Jr d/b/a Country Aire Construction ("Roberts" or "Appellee") to recover in quantum meruit. Appellant and Appellee filed respective briefs (Court File No. 4 & 8, respectively). After holding a hearing and giving careful consideration to the parties' arguments, the relevant case law, and the evidentiary record, the Court **AFFIRMS** the order of the bankruptcy court.


## I.    BACKGROUND

Appellant Phillips Rental Properties, LLC is a real estate development and apartment leasing business; Gary Phillips Construction ("GPC") is a building company; and Appellee Roberts is a subcontractor. In 2006 GPC and Appellee entered into a master agreement for Appellee to provide fill dirt hauling services. Starting in April 2008, GPC directed Appellee to haul fill dirt from a Johnson City municipal project known as the Brush Creek Water and Sewer Project ("Bush Creek") to a GPC site located at 2018 and 2020 Indian Ridge Road in Johnson City, Tennessee (the "Property"). Appellant owned the Property. Appellee agreed to haul the

fill for $20 per load.[1]  Appellee sent periodic invoices to GPC for a few months, but they went

unpaid.  In September 2008, Appellee stopped hauling fill to the Property because of continued

nonpayment.  GPC failed to pay for 1,842 loads between April and September 2008. GPC and

Appellant contend the fill dirt was useless.

In April 2009, Appellee filed a complaint in Washington County Court to enforce a

materialman's lien for the unpaid hauling services.  Appellant filed an answer and some

discovery was taken.  In December 2010, however, Appellant and GPC both filed for Chapter 11

bankruptcy (GPC's appeal to this Court was Case No. 2:12-CV-420, which concluded in a

settlement between Appellee and GPC).

In April 2011, Appellee filed a proof of claim in the bankruptcy court before the claims

bar closed.  Appellant, the Debtor in possession, filed an objection in January 2012 to Appellee's

second amended proof of claim.  Appellant asserted the materialman's lien had expired for

failure to comply with Tenn. Code Ann. §§ 66-11-101, *et seq*.  In February 2012, the bankruptcy

court agreed with Appellant and ruled that Appellee was not entitled to a materialman's lien

because he failed to properly attach the property in state court.

However, after ruling that Appellee was not entitled to the lien, the bankruptcy court

allowed him to file a third and final amendment to his proof of claim so he could seek recovery

in quantum meruit.  Appellee filed his third amended proof of claim in March 2012.  Appellant

did not object to this on procedural grounds, but it filed an objection to the quantum meruit claim

on the merits.  The bankruptcy court held a trial on the claim in July 2012.[2] The bankruptcy court

---

[1] This rate was lower than normal because Johnson City was already paying Roberts to
remove the fill from Bush Creek.

[2] The claim was tried along with the related proceeding of debtor GPC, which dealt with

denied Appellant's objection to the third amended proof of claim and allowed Appellee to recover in quantum meruit. The court determined Appellant owed Appellee $36,440 (1,822 loads at $20 each). Appellant now appeals from the bankruptcy court's order allowing recovery in quantum meruit (Court File No. 1-41).

## II.     STANDARD OF REVIEW

The district court has appellate jurisdiction to hear appeals from final judgments and orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(1). The bankruptcy court's factual findings are reviewed for clear error and its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004). A finding of fact is considered clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985).

## III.     DISCUSSION

Appellant raises four appeal issues, which the Court will address in turn.

### A.     Amendment to Claim of Proof

Appellant first argues that the bankruptcy court erred in allowing Appellee to raise the quantum meruit theory in an amended proof of claim, long after the claims bar, once he received an adverse decision on his materialman's lien claim. As an initial matter, the Court observes that while Appellant objected before the bankruptcy court to the merits of the quantum meruit claim (*see* Court File No. 1-25), it does not appear Appellant ever objected to the procedural propriety

similar issues.)

3

of allowing the amended proof of claim in general or the inclusion of the quantum meruit claim in particular. Appellate courts ordinarily do not consider issues a party fails to raise in the court below, and this rule applies equally to district courts hearing bankruptcy appeals. *See In re De Jounghe*, 334 B.R. 760, 766 (B.A.P. 1st Cir. 2005). For this reason alone, the Court has grounds to reject the instant appeal ground. To the extent the issue could be considered properly before the Court, however, Appellant's arguments are unavailing.

The bar date in a Chapter 11 case is important for providing the debtor and creditors with finality. However, amendments coming after the bar date to timely creditor proofs of claim are liberally permitted "[1] to cure a defect in the claim as originally filed, [2] to describe the claim with greater particularity or [3] to *plead a new theory of recovery on the facts set forth in the original claim*." *In re Kolstad*, 928 F.2d 171, 175 (5th Cir. 1991) (quoting *In re Int'l Horizons, Inc*., 751 F.2d 1213, 1216 (11th Cir. 1985)); *see also In re Miller*, 118 B.R. 76, 79 (E.D. Tenn. 1989) (applying same standard in Chapter 13 case). Still, "the court must subject post-bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment." *In re Miller*, 118 B.R. at 79 (citing *In re International Horizons, Inc*., 751 F.2d at 1216).

If the amendment falls within one of the above categories, the Could goes to the second step and balances several equitable factors: "(i) undue prejudice to the opposing party; (ii) bad faith or dilatory behavior on the part of the claimant; (iii) whether other creditors would receive a windfall where the amendment not allowed; (iv) whether other claimants might be harmed or prejudiced; and (v) the justification for the inability to file the amended claim at the time the original claim was filed." *In re Andover Togs, Inc*., 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999);

4

*see also In re Miller*, 118 B.R. at 80l; *In re Doctors Hosp. of Hyde Park, Inc.*, 308 B.R. 311, 320 (Bankr. N.D. Ill. 2004).

Under the first step, there is no question that by adding the quantum meruit claim when amending his bankruptcy claim, Appellee pleaded a "a new theory of recovery on the facts set forth in the original claim." *In re Kolstad*, 928 F.2d at 175. The original proof of claim alleged Appellee had an enforceable materialman's lien because he had not been paid for the fill dirt he delivered to Appellant. The quantum meruit theory, which asserted Appellant was liable to pay for the benefit conferred upon it, is premised upon the same factual allegations underpinning the materialman's lien claim.

Regarding the second step, Appellant argues that the balance of equities did not favor allowing the amendment. It asserts that because quantum meruit was raised only after Appellee lost on the materialman's lien claim, allowing the subsequent amendment gave Appellee a "second bite at the apple." Appellant also contends Appellee did not show a good reason for the delay and that the delay harmed Appellant and its other creditors.[3]

Appellant has not cited, and the Court has not found, any authority holding that a party may never amend its proof of claim before the bankruptcy court after losing on one theory of recovery. Although Appellant may not like the merits of the bankruptcy court's conclusion, Appellant has not shown how the bankruptcy court's allowing a quantum meruit theory to be added to the proof of claim prejudiced Appellant or its other creditors. It cannot be argued that

---

[3] Appellant cites various cases construing the Tennessee and federal rules of civil procedure to explain the factors a court should consider when allowing a plaintiff to amend a complaint. These are not very useful, however, as numerous courts across the country, including in this district, have adopted the two-step process described above in the bankruptcy context. Considering the general federal and state cases is unhelpful given the nature of bankruptcy proceedings and abundance of bankruptcy case law on proof-of-claim amendments.

5

quantum meruit issue took Appellant by surprise, as it was a predictable theory of liability given

the facts in the original proof of claim.  Further, Appellant had adequate time to prepare a

defense once the third amended proof was filed.  In balancing the equities, the Court concludes

that (1) there was no undue prejudice caused to Appellant, particularly as it did not object below

to allowing Appellee to amend the proof of claim; (2) there is no evidence that Appellee engaged

in bad faith or dilatory behavior; (3) there is no evidence that another creditor received a

windfall; (4) there is no evidence that other parties were harmed by allowing the amendment;

and (5) it is unclear what justification Appellee had for not including the quantum meruit claim

in the original proof of claim.  *See In re Miller*, 118 B.R. at 80l.  Considering the above factors

together, the Court cannot conclude the bankruptcy court erred in allowing the amendment.

## B.    Quantum Meruit Analysis

Appellant next argues the bankruptcy court erred in concluding Appellee met his burden

of showing he was entitled to recover in quantum meruit.  Under Tennessee law, the party

asserting quantum meruit has the burden of showing the following circumstances:

> (1) there must be no existing, enforceable contract between the parties covering
> the same subject matter;
> (2) the party seeking recovery must prove that it provided valuable goods and
> services;
> (3) the party to be charged must have received the goods and services;
> (4) the circumstances must indicate that the parties involved in the transaction
> should have reasonably understood that the person providing the goods or
> services expected to be compensated; and
> (5) the circumstances must also demonstrate that it would be unjust for the party
> benefitting from the goods or services to retain them without paying for them.

*Dillard Const., Inc. v. Havron Contracting Corp*., No. E201000170COAR3CV, 2010 WL

4746244, *3-4 (Tenn. Ct. App. Nov. 23, 2010) (citing *Castelli v. Lien*, 910 S.W.2d 420, 427

(Tenn. Ct. App. 1995)).

## 1. Benefit

Appellant only challenges the bankruptcy court's analysis of the fifth factor. Specifically, Appellant argues it did not actually benefit from the fill dirt because the material was unsuitable and had to be removed from the Property. During the trial, Gary Phillips testified that less than five percent of the fill in question was usable and that GPC removed the rest from the Property, brought it to a separate site, and "threw it in a hole that I didn't need" in "an area that would never be built on" (Court File No. 1-45, Tr. 209, 216). However, Appellee's witness, Mr. Albin, testified that the fill was usable. Further, it was undisputed that Appellant continued to accept the fill for months and never ordered the deliveries to halt. Accordingly, the bankruptcy court reached a factual finding that the fill dirt was useable. As the court explained:

> It is simply not logical that the debtor would have continued to receive defective soil over six months without taking more radical steps to stop delivery than simple verbal requests. While Mr. Roberts admitted that 10 to 20 of the loads were soupy and nonacceptable, the evidence establishes that the overwhelming majority of the remaining loads were suitable.

> Mr. Albin testified credibly that he personally delivered several hundred loads, that the soil was good, and Mr. Phillips personally told him to keep making deliveries. Although Mr. Bennett testified that the materials from Mr. Roberts were very wet, he also testified that he only personally observed the dumping of 20 loads and admits that he was called from time to time to push the delivered dirt down. Accordingly, the court rejects the assertion that Mr. Roberts' claim for payment should be disallowed because the fill dirt was defective.

(Court File No. 1-47, Tr. 458). To overturn the bankruptcy court's finding, this Court would have to be "left with the definite and firm conviction that a mistake has been committed." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Here, although there is evidence on both sides of the issue, there is sufficient evidence (including Mr. Albin's testimony regarding the quality of the fill dirt as well as the fact that Appellant continued to

accept the fill dirt it now claims was defective) to sustain the bankruptcy court's finding that the fill was usable and thus a benefit to Appellant.[4]

### 2. Burden

Appellant also argues that the bankruptcy court improperly placed the burden on Appellant to show it did not benefit from the fill dirt. The proponent of a quantum meruit claim has the burden of proof under Tennessee law. *Alcazar v. Hayes*, 982 S.W.2d 845, 856, n.15 (Tenn. 1998). Appellant points to an exchange at trial that occurred during the court's handling of an evidentiary issue. On the morning of the second day of trial, Appellant attempted to amend the exhibit and witness list to offer a soil sample report and a witness to authenticate it. Appellant claimed the purpose was to rebut a line of questioning from the previous day, during which Appellee's attorney asked Phillips whether the fill dirt had been tested. The following exchange occurred when Appellee's attorney objected to Appellant's attempt to amend the exhibit list and offer the soil test:

> [APPELLEE'S COUNSEL]: Your Honor, I think this is entirely inappropriate and I think it's entirely too late to be bringing in this, this, this report and this witness. Several things I would point out.
>
> No. 1, there were initial disclosures under Rule 26 that are required. Nothing about any soil testing or reports were identified in that. The issue of soil suitability is not some surprise that they found out during my questioning. *The issue of soil suitability is their defense. That's something they put in issue, not us.*
>
> *So if they wanted to prove something about the soil being inappropriate or unsuitable, that was clearly their issue that they started and clearly, something*

---

[4] The Court notes that during oral argument Appellant raised for the first time whether the bankruptcy court's damages award of $36,440 (1,822 loads at $20 each) accurately reflected the benefit conferred upon Appellant. Although the Court does not see how Appellant's contention would be meritorious, it need not rule on the issue as Appellant failed to raise it in its brief before this Court.

*they could have foreseen and should have been prepared to, to prove. If they needed this soil report in order to do that, they could have done that from the beginning.*

Not only was it not in the initial disclosures, it was not in their pre-trial disclosures. There was a witness in their disclosures, a Gary Tysinger of Tysinger -- I can't recall his, the whole name of his company. He's a soil expert. He was on their witness list. So I called him. I won't, of course, report to the Court what he told me -- that's not at issue -- but that -- that's -- that's part of the fair play of discovery, to know who the witness might be.

So for them to bring another witness in at this point and to bring this soil testing in at this point is just too late. It's too little, too late. This is, this report is, I don't know how many pages. I've had a chance just to read the Executive Summary. I got it at four minutes to 9:00. My client has read over it. It's --

THE COURT: *I agree, Ms. Russell*.

I realize, Mr. Shorter, that you couched it in terms of rebuttal, but this has been the issue that was raised in the objection to the claim, that the soil was not suitable. It appeared to be contemplated, the possibility of testing the soil, by the mentioning of an expert. That's, that's always been an issue and I would assume that in preparing this case for hearing the parties considered whether or not it was necessary to test the soil and to come in at this late date is not appropriate.

So the request is denied.

(Court File No. 1-47, Tr. 260-261) (emphasis added). Appellant set forth in its brief only the portions italicized above in an effort to show that the bankruptcy court agreed with Appellee's counsel's suggestion that Appellant had the burden of showing the fill was usable. But Appellant's selective quotation leaves out critical context, including the statement immediately preceding the bankruptcy judge saying he agreed with Appellee's counsel. Just before this affirmation, Appellee's counsel had argued that the bankruptcy court should exclude the evidence because it was not in the pretrial disclosures and counsel was not given a chance to depose the proposed witness or even view the report ahead of time. When considered in its full

9

context, the exchange Appellant cites does not show that the bankruptcy court improperly put the burden of proof on Appellant. At most, the court simply agreed that given Appellant's knowledge that the quality of the fill dirt would be contested, it would be unfair to allow Appellant to sandbag Roberts midtrial with a previously undisclosed witness and exhibit going to that issue. Accordingly, the bankruptcy court did not misallocate the burden of proof.

## C.     Evidentiary Ruling on Soil Report

Appellant also contends the bankruptcy court abused its discretion by not admitting the previously undisclosed soil report. Appellant asserts the report was rebuttal evidence to the previous day's testimony in which Appellee's attorney questioned Phillips about whether the soil had been tested. Appellant contends that "[b]ecause [Appellee] held the burden, once he attempted to suggest there was an 'omission' on the part of [Appellant] to obtain soil samples, [Appellant] should have been afforded the opportunity to rebut the suggestion of this omission" (Court File No. 4, pp. 19-20).

The Court cannot conclude the bankruptcy court abused its discretion by coming to a different conclusion. The bankruptcy court noted it was keeping out the evidence because Appellant failed to timely disclose it. This was not evidence that only became relevant upon rebuttal; soil quality went to the core of the parties' disagreement. As the bankruptcy court noted, Appellant raised the very issue of the fill dirt's suitability in its objection to the amended proof of claim asserting quantum meruit. Appellant asserted in the objection that "[t]he Claimant was expected to deliver suitable materials; this he did not do" (Court File No. 1-25). As there is no dispute that the fill was in fact delivered, Appellant's objection was clearly based on whether the fill was defective. Accordingly, the bankruptcy court acted within its discretion

10

when it denied Appellant leave to amend the witness and exhibit list on the second day of trial and offer previously undisclosed evidence.

### D.     Failure to Perfect

Appellant's last argument is that the bankruptcy court erred by allowing Appellee, a subcontractor, to pursue a quantum meruit claim against the property owner even though Appellee failed to perfect his materialman's lien. Appellant admits that "the Tennessee Supreme Court previously adopted a position allowing quantum meruit to a subcontractor that failed to perfect his mechanics' lien," but Appellant argues that "if revisited, the Tennessee Supreme Court would potentially adopt a position in line with those of other jurisdictions which have considered the issue but rejected the subcontractor's attempt to hold the owner liable when the act or omission to obtain a mechanics' lien was the subcontractor's fault" (Court File No. 4, p. 12). Appellant contends that because Appellee contracted with GPC and not Appellant, "[a]llowing quantum meruit against [Appellant] gives [Appellee] preferential treatment vis-à-vis Gary Phillips Construction's other creditors." A non-Tennessee case supporting Appellant's arguments states that "[t]o allow a subcontractor who has failed to perfect his lien to achieve preference through the indirect route of recovery from the homeowner is simply inequitable and would provide for another kind of unjust enrichment, in that case the enrichment of the subcontractor at the expense of other creditors." *Green Quarries, Inc. v. Raasch*, 676 S.W.2d 261, 267 (Mo. Ct. App. 1984).

The Tennessee Supreme Court, however, has spoken clearly on this issue: "we hold that where a materialman or subcontractor furnishes labor or materials which benefit the property of a person with whom there is no privity of contract, an action on quantum meruit may lie against

11

the landowner to recover the reasonable value of said labor and materials so furnished." *Paschalls, Inc. v. Dozier*, 407 S.W.2d 150, 155 (Tenn. 1966). As the court explained, "[t]o hold that, in absence of a mechanic's lien, privity of contract is a prerequisite in all actions to recover the value of labor and material furnished, would not only open the door to fraud, but would completely abrogate the common law remedy of quantum meruit." *id.*; *see also Weather Doctor Servs. Co., Inc. v. Stephens*, No. E200001427COAR3CV, 2001 WL 849540, at \*2 (Tenn. Ct. App. July 27, 2001). It is not for this Court to question the clear holdings of Tennessee's appellate courts when applying Tennessee law. Accordingly, Appellant's final argument fails.

## IV.    CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court. There being no other issues remaining for adjudication, the Court **DIRECTS** the Clerk of Court to **CLOSE** the case.

**SO ORDERED.**

**ENTER:**

/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

ENTERED AS A JUDGMENT
    s/ Debra C. Poplin
    CLERK OF COURT

12